1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11
12   SALVADOR SOLORIO,                  )   Case No. CV 14-5663-KK
13              Petitioner,             )
                                        )   MEMORANDUM AND ORDER
14         v.                           )
                                        )
15   JEFFREY BEARD,                     )
16              Respondent.             )
                                        )
17   ─────────────────────────────────  )

18         Petitioner Salvador Solorio, a California state parolee proceeding *pro se*, has filed

19   a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254,

20   challenging his conviction for assault with a firearm and an accompanying gang

21   sentencing enhancement.[1]  Petitioner claims (1) there was insufficient evidence to

22   convict him of the assault or find him subject to the enhancement, and (2) he received

23   ineffective assistance of counsel.  The parties have consented to the jurisdiction of the

24   ────────────────

25         [1] Because Petitioner has been released on parole, Jeffrey Beard, the Secretary of
26   California's Department of Corrections and Rehabilitation, is considered Petitioner's
     custodian and is substituted as the proper respondent in this case.  See Fed. R. Civ. P.
27   25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District
28   Courts.

                                          1

undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, the Petition is DENIED.

## I.

## PROCEDURAL HISTORY

On November 29, 2010, following a jury trial in San Luis Obispo County Superior Court, Petitioner was convicted of assault with a semiautomatic firearm, in violation of Cal. Penal Code § 245(b).[2]  Lodged Document ("Lodg.") 1 at 405.[3]  Pursuant to Cal. Penal Code § 186.22(b)(1)(B), Petitioner received a sentencing enhancement because the jury "found to be true allegations that the assault was committed . . . for the benefit of a criminal street gang."  Lodg. 8 at 1.  On June 6, 2011, Petitioner was sentenced to an aggregate term of eight years in prison.  Lodg. 1 at 405.

On May 4, 2012, Petitioner appealed his conviction to the California Court of Appeal.  Lodg. 5.  On May 13, 2013, the court issued an unpublished opinion affirming Petitioner's conviction and sentence enhancement.  Lodg. 8.

On June 24, 2013, Petitioner filed a petition for review in the California Supreme Court.  Lodg. 9.  On July 31, 2013, the court summarily denied the petition.  Lodg. 10.

On July 22, 2014, Petitioner filed the instant Petition.  On December 24, 2014, Respondent filed an Answer to the Petition.  Petitioner has not filed a reply.  This matter is now ready for decision.

///

///

///

---

[2] Petitioner was tried with co-defendant Frank Jamesricky Sanchez, who was also convicted of assault with a semiautomatic firearm and found subject to a gang sentencing enhancement.  Lodg. 8 at 1.

[3] Respondent lodged documents with its Answer to the Petition.  See Notice of Lodging, ECF No. 18.

1

## II.

2

## FACTUAL BACKGROUND

3     For a summary of the facts, this Court relies on the California Court of Appeal's

4 opinion:[4]

5             Isaac Abarca was associated with a gang known as Mexican Pride.

6             Solorio and Sanchez were members of a rival gang known as Paso

7             Robles 13. Abarca had participated in previous gang-related fights

8             with Solorio. Abarca and Solorio also had a personal connection.

9             Abarca had fathered two children with Sarah K., a woman who was

10            romantically involved with Solorio at the time of the charged offenses.

11

12            On July 10, 2010, Abarca was having a birthday party for his five-

13            year-old son in the front yard of his residence. The mother of the son

14            was the woman then in a relationship with Solorio. Solorio and

15            Sanchez drove by in a Chevy Blazer. Sanchez was driving and

16            Solorio was a passenger. Seeing Solorio in the car, Abarca threw a

17            can of beer at the car. The beer can hit a tree, not the car. Abarca then

18            hopped the fence and ran towards the car seeking to fight with

19            Solorio. Solorio got out of the passenger side of the Blazer holding a

20            knife. Sanchez got out of the driver's side holding a semiautomatic

21            firearm. Abarca stopped when Sanchez pointed the firearm at him.

22            There was some yelling. Abarca's father tried to pull Abarca away,

23

24     _____

25     [4] Because this factual summary is drawn from the California Court of Appeal's
opinion, "it is afforded a presumption of correctness that may be rebutted only by clear
26 and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008)
(citations omitted). Petitioner adopted this summary for purposes of his petition for
27 review to the California Supreme Court. Lodg. 9 at 5. In addition, this Court has
independently reviewed the trial record and finds the summary accurate.
28

1    and told Sanchez not to shoot his son.

2

3    Sanchez and Solorio appeared to be getting back into their car when
4    Solorio told Sanchez, "Shoot him, shoot him." Sanchez turned and
5    fired a shot which hit the ground in front of the feet of Abarca's
6    father. The impact from bullet fragments or debris on the ground
7    caused minor injuries to the father's leg.

8

9    After the shot, Abarca ran towards the car and hit its back window as
10   it started to drive away. A friend of Abarca reached the car as Solorio
11   and Sanchez drove off. A witness saw the car and a portion of the
12   confrontation. She heard yelling and gesturing. She saw Sanchez fire
13   a shot at the men standing in the road.

14

15   In his initial interview with the police, Abarca's father recited the
16   facts as set forth above but did not state that he heard Solorio say,
17   "shoot him, shoot him" to Sanchez. In another police interview the
18   following day, Abarca's father told police that he heard Solorio
19   repeatedly tell Sanchez to shoot him. Abarca claimed the shooting
20   occurred because of the people he and Solorio associated with in the
21   past, namely, the Mexican Pride and Paso Robles 13 gangs.

22   Lodg. 8 at 2-3.

23       The Court will discuss additional facts as they relate to Petitioner's claims for
24   relief.

25

26                                    **III.**
27                  **PETITIONER'S CLAIMS FOR RELIEF**
28       Petitioner asserts three claims for habeas relief:  (1) there is insufficient evidence

                                      4

to support Petitioner's conviction for assault with a semiautomatic firearm; (2) there is insufficient evidence to support Petitioner's gang sentencing enhancement; (3) Petitioner did not receive effective assistance of counsel at trial.  ECF No. 1 at 5-6.

# IV.

## **STANDARD OF REVIEW**

A federal court may review a habeas petition by a person in custody under a state-court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal habeas relief is not available for state-law errors.  Swarthout v. Cook, 562 U.S. 216, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (per curiam).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law" means federal law that is clearly defined by the holdings of the Supreme Court at the time of the state-court decision.  See, e.g., Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011).  Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted).

The AEDPA standard requires a high level of deference to state courts, such that a

5

1    state court's decision will be upheld if "fairminded jurists could disagree as to whether it

2    was correct." Gulbrandson v. Ryan, 738 F.3d 976, 990 (9th Cir. 2013) (citation and

3    internal quotation marks omitted); see also Turner v. Calderon, 281 F.3d 851, 881 (9th

4    Cir. 2002) (noting the "presumption of regularity accorded state convictions") (citation

5    and internal quotation marks omitted).  Even if this Court finds a state-court error of

6    clear constitutional magnitude, habeas relief is not available unless the error "had

7    substantial and injurious effect or influence in determining the jury's verdict." Fry v.

8    Pliler, 551 U.S. 112, 116, 121-22, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (citations

9    and internal quotation marks omitted).

10       Where, as here, the California Supreme Court denies a petitioner's claims without

11   comment, the state high court's "silent" denial is considered to be "on the merits" and to

12   rest on the last reasoned decision on these claims.  See Ylst v. Nunnemaker, 501 U.S.

13   797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).  In the case of the instant

14   claims, the last reasoned decision is that of the California Court of Appeal in its decision

15   on direct review.

16

17                                        **V.**

18                                  **DISCUSSION**

19   **A.   Claim One**

20       Petitioner argues there was insufficient evidence to prove he "aided and abetted

21   the assault with a semi-automatic firearm." ECF No. 1 at 5.

22

23       **1.   Relevant Law**

24          **a.   Legal Sufficiency**

25       The standard of review on a legal sufficiency claim is whether, "after viewing the

26   evidence in the light most favorable to the prosecution, *any* rational trier of fact could

27   have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

28   Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in

1  original); <u>see also</u> <u>Gonzalez v. Knowles</u>, 515 F.3d 1006, 1011 (9th Cir. 2008).  This

2  court will not reweigh the evidence to reach a result different from that of the jury.  <u>See</u>

3  <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995) ("The reviewing court must

4  respect the province of the jury to determine the credibility of witnesses, resolve

5  evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that

6  the jury resolved all conflicts in a manner that supports the verdict.").  "Circumstantial

7  evidence and reasonable inferences drawn from it may properly form the basis of a

8  conviction."  <u>Schad v. Ryan</u>, 671 F.3d 708, 717 (9th Cir. 2011) (citation omitted); <u>see</u>

9  <u>also</u> <u>Jackson</u>, 443 U.S. at 324-25 ("From the circumstantial evidence in the record, it is

10  clear that the trial judge could reasonably have found beyond a reasonable doubt that the

11  petitioner did possess the necessary intent at or before the time of the killing.").

12        On federal habeas review under AEDPA, the Court must apply the standards of

13  <u>Jackson</u> with an "additional layer of deference" to the state court's decision, and may

14  only overturn that decision if it constituted an "objectively unreasonable application" of

15  <u>Jackson</u>.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 & n.12 (9th Cir. 2005).  The <u>Jackson</u>

16  standard is "applied with explicit reference to the substantive elements of the criminal

17  offense as defined by state law."  <u>Jackson</u>, 443 U.S. at 324 n.16.  The Court, therefore,

18  first looks to California law when assessing whether the California Court of Appeal

19  unreasonably applied <u>Jackson</u> in deciding there was sufficient evidence supporting

20  Petitioner's conviction.

21

22                   **b.**    **Elements of Aiding and Abetting Assault**

23        "The elements of assault with a semiautomatic firearm are that the person (1) used

24  such a firearm in a manner that by its nature would directly and probably result in the

25  application of force to someone, (2) acted willfully, (3) was aware of facts that would

26  lead a reasonable person to realize the act by its nature would directly and probably

27  result in application of force to someone, and (4) had the ability to apply force with the

28  firearm."  Lodg. 8 at 3 (citing, *inter alia*, <u>People v. Golde</u>, 163 Cal. App. 4th 101, 121

1   (2008)).

2       "A person aids and abets an offense if he or she aids, encourages or facilitates the

3   commission of the offense, with knowledge of the criminal purpose of the direct

4   perpetrator, and with the intent to aid, encourage or facilitate the offense." Id. (citing,

5   inter alia, People v. McCoy, 25 Cal. 4th 1111, 1118 (2001)). A "person who aids and

6   abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of

7   the actual perpetrator." People v. Smith, 60 Cal. 4th 603, 611 (2014) (citation and

8   internal quotation marks omitted).

9

10          **2.      California Court of Appeal's Decision**

11      On direct appeal, Petitioner argued there was insufficient evidence to prove he

12  aided and abetted the assault with a semiautomatic firearm. Lodg. 5 at 18. Specifically,

13  Petitioner argued his "mere presence in the vehicle from which [Sanchez] fired a weapon

14  [did] not amount to aiding and abetting." Id. at 25.

15      The California Court of Appeal rejected Petitioner's argument. Lodg. 8 at 3-4.

16  The court found the evidence of aiding and abetting "extended far beyond mere

17  presence," including evidence (1) Petitioner and Sanchez were in the same gang; (2)

18  Petitioner drove to the party with Sanchez with weapons in the car; and (3) Petitioner

19  "encouraged Sanchez to shoot Abarca." Id.

20

21          **3.      Discussion**

22      As the California Court of Appeal stated, the evidence at Petitioner's trial showed

23  he was in a gang with Sanchez; he drove Sanchez to the scene of the incident with

24  weapons in tow; he knew – and had previously fought with – Abarca; and he told

25  Sanchez to "shoot" Abarca. See id. at 2-3. From that evidence, a "rational trier of fact"

26  could easily find Petitioner guilty of aiding and abetting Sanchez in committing assault

27  with a semiautomatic firearm. Jackson, 443 U.S. at 319. At a minimum, the California

28  Court of Appeal's rejection of Petitioner's legal sufficiency claim was not an

8

1  "objectively unreasonable application" of <u>Jackson</u>.  <u>Juan H.</u>, 408 F.3d at 1274 n.12.

2

3  **B.     Claim Two**

4         Petitioner argues there was insufficient evidence "to establish the gang

5  enhancement."  ECF No. 1 at 5.

6

7         **1.     Relevant Law**

8         As in Claim One, the Court analyzes whether the California Court of Appeal's

9  decision constituted an objectively unreasonable application of <u>Jackson</u>.  <u>See</u> <u>supra</u>

10 Section V.A.1.a.

11        "A gang enhancement requires proof of the existence of a criminal street gang and

12 that the offense was 'committed for the benefit of, at the direction of, or in association

13 with any criminal street gang, with the specific intent to promote, further, or assist in any

14 criminal conduct by gang members . . . .'"  Lodg. 8 at 5-6 (quoting Cal. Penal Code §

15 186.22(b)(4)).  "Expert testimony is admissible to prove these elements, including the

16 motivation for a crime, and whether it was committed to benefit or promote a gang."  <u>Id.</u>

17 at 6 (citations omitted).  "Expert opinion that particular criminal conduct benefitted a

18 gang by enhancing its reputation for viciousness can be sufficient to raise the inference

19 that the conduct was committed for the benefit of a criminal street gang."  <u>People v.</u>

20 <u>Albillar</u>, 51 Cal. 4th 47, 63 (2010) (citations, alterations, ellipses, and internal quotation

21 marks omitted).

22

23        **2.     Background**

24        **a.     Evidence at Trial**

25 According to the California Court of Appeal's opinion:

26        [At trial,] the prosecution presented expert testimony from sheriff's

27        deputy Michael Hoier. Deputy Hoier testified that Solorio and

28        Sanchez were members of the Paso Robles 13 gang whose criminal

9

activities included assaults with deadly weapons and other crimes likely to cause great bodily injury. He testified that Abarca's Mexican Pride gang was a rival of Paso Robles 13. He testified to various predicate offenses by the gang, including offenses involving confrontations between Solorio and Abarca.

Deputy Hoier testified that respect was of critical importance to gang members, and that a gang member will confront anyone who shows him disrespect. A gang member who avoids confrontation or fails to confront disrespect loses status in the gang. An enemy of one gang member will become the enemy of the entire gang and gang members are expected to stand up for each other.

In response to a hypothetical question using the facts of this case, Deputy Hoier opined that the assault with a semiautomatic weapon offense was committed for the benefit of, in association with, and at the direction of a criminal street gang. He testified that a crime committed with a firearm would benefit the gang because of its terrorizing effect on the public, and that a crime committed by multiple gang members is committed in association with and at the direction of the gang because gang members are required to support and assist fellow gang members.

Lodg. 8 at 6.

### b.    California Court of Appeal's Decision

On direct appeal, Petitioner argued there was insufficient evidence to support the gang sentencing enhancement.  Lodg. 5 at 35.  Specifically, Petitioner argued reversal was required because expert testimony "was the *only* evidence offered by the prosecution

1  to establish the elements of the gang enhancement." Id. at 44 (emphasis in original).

2  According to Petitioner, there was "no other evidence from which a reasonable jury

3  could infer intent" to promote, further, or assist in criminal conduct by gang members.

4  Id. Petitioner attempted to argue the assault was "personally motivated" – by Abarca's

5  jealousy of Solorio – not gang-related.  Lodg. 8 at 7.

6      The California Court of Appeal found sufficient evidence supported the gang

7  enhancement. Id. at 5.  The court stated the jury "could reasonably infer from [Deputy

8  Hoier's] expert opinion and other evidence" that the assault was gang-related and

9  committed with the specific intent of assisting in any criminal conduct by gang members.

10  Id. at 7.  In response to Petitioner's argument that the assault was personally motivated,

11  the court stated that the mere "existence of some evidence which would support a

12  finding" contrary to the jury's "is not a basis for reversal." Id. (citation omitted).

13

14      **3.    Discussion**

15      There was evidence Petitioner was in a gang with Sanchez, and that Abarca was in

16  a rival gang. Id. at 6.  An expert testified an offense like the one in this case would

17  benefit a gang "because of its terrorizing effect on the public." Id. at 6.  This expert

18  testimony, by itself, was "sufficient to raise the inference that [Petitioner's] conduct was

19  committed for the benefit of a criminal street gang." Albillar, 51 Cal. 4th at 63.

20  Moreover, Abarca himself "claimed the shooting occurred because of" gangs he and

21  Solorio "associated with."  Lodg. 8 at 3.

22      From all of this evidence, a "rational trier of fact" could easily find Petitioner is

23  subject to the gang enhancement – i.e., that the offense in this case was committed in

24  association with a gang, with the intent to assist in criminal conduct by the gang's

25  members. Jackson, 443 U.S. at 319.  At a minimum, the California Court of Appeal's

26  rejection of Petitioner's legal sufficiency claim was not an "objectively unreasonable

27  application" of Jackson.  Juan H., 408 F.3d at 1274 n.12.

28

11

**C.   Claim Three**

Petitioner argues he "was denied his federal constitutional right to the effective assistance of counsel." ECF No. 1 at 6.  Presumably, the basis for this argument is the same one Petitioner raised on direct appeal – *i.e.*, his lawyer should have objected when the prosecutor said, in summation, he "believe[d]" Petitioner and Sanchez were guilty. Lodg. 5 at 49.  According to Petitioner, "the lack of the appropriate objection left the jury with the belief that if the prosecutor, himself, believed in the guilt of the defendants, they too should so believe." Id. at 58.

**1.     Relevant Law**

Criminal defendants have a constitutional right to the effective assistance of counsel.  Hurles v. Ryan, 752 F.3d 768, 785 (9th Cir. 2014).  Under the Supreme Court's "Strickland test," to establish ineffective assistance of counsel, a defendant must show (1) trial counsel's "performance fell below an objective standard of reasonableness," and (2) "the performance prejudiced his defense." Deere v. Cullen, 718 F.3d 1124, 1163 (9th Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  There is a strong presumption that counsel's conduct fell within "the wide range of reasonable professional assistance." Id. (citation and internal quotation marks omitted).  To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation and internal quotation marks omitted).

Under AEDPA, this Court's review of an ineffective assistance of counsel claim is "doubly deferential," since the Court must give "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013) (citation and internal quotation marks omitted).  Thus, Petitioner must not only demonstrate counsel's performance was incompetent and prejudicial, but that it was "necessarily unreasonable" for the state courts to find otherwise. Cullen, 131

12

1   S. Ct. at 1403.

2

3   **2.    Background**

4   **a.    Trial Proceedings**

5   Toward the end of summation, after reviewing the evidence against Petitioner and

6   Sanchez, the prosecutor concluded by telling the jury:  "[I] hope you convict [Petitioner

7   and Sanchez] of the crimes they are charged with because I believe they are guilty of

8   those crimes.  Thank you."  Lodg. 2 at 4246.  Neither Petitioner's nor Sanchez's lawyer

9   objected to this statement.

10

11   **b.    California Court of Appeal**

12   On direct appeal, Petitioner argued his lawyer's failure to object to the

13   prosecutor's statement constituted ineffective assistance of counsel.  Lodg. 5 at 49.  The

14   California Court of Appeal rejected this argument.  Lodg. 8 at 7.  The court found the

15   "prosecutor's articulation of belief in defendants' guilt" was not inappropriate, because

16   there was no suggestion "it was based in any part on facts which were not presented to

17   the jury as evidence."  Id. at 8.  The court found that, because the statement was not

18   inappropriate, Petitioner's lawyer was not ineffective for failing to object to it.  Id.

19

20   **3.    Discussion**

21   "As a general rule, a prosecutor may not express his opinion of the defendant's

22   guilt or his belief in the credibility of government witnesses."  United States v. Williams,

23   989 F.2d 1061, 1071 (9th Cir. 1993) (citation omitted).  However, where vouching

24   functions "mainly as rhetorical emphasis for the inferences the prosecutor [is] urging the

25   jury to draw rather than a meaningful personal assurance that" a defendant is guilty, the

26   vouching does not constitute reversible error.  Id.

27   Here, the prosecutor reviewed the evidence against Petitioner and Sanchez, and

28   concluded by saying he hoped the jury would convict because he "believe[d]" Petitioner

13

and Sanchez "are guilty." Lodg. 2 at 4242-46. The prosecutor's statement functioned "mainly as rhetorical emphasis," not as an improper personal assurance that Petitioner and Sanchez were guilty. Williams, 989 F.2d at 1071. In addition, as the California Court of Appeal found, the prosecutor's statement did not suggest the existence of incriminating information which was not presented at trial. Thus, the prosecutor's statement was not improper or objectionable.

However, even assuming *arguendo* the prosecutor's statement of belief was improper, it was not so improper that defense counsel acted unreasonably by failing to object, the first prong of Strickland. See Deere, 718 F.3d at 1163. Furthermore, assuming defense counsel's failure to object was unreasonable, there is no reason to think this failure prejudiced Petitioner, the second prong of Strickland. See id. At a minimum, it was not "necessarily unreasonable" for the California Court of Appeal to find Petitioner's lawyer was not ineffective for failing to object. Cullen, 131 S. Ct. at 1403.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that judgment be entered DENYING the Petition for Writ of Habeas Corpus and DISMISSING this action with prejudice.

DATED:   February 12, 2015

_____
HON. KENLY KIYA KATO
United States Magistrate Judge

14